UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| EVAN WILLIAM BLICKENSTAFF, | Case No. 21-cv-09952-WHO |
|---|---|
| Plaintiff, | |
| v. | **ORDER GRANTING MOTION TO DISMISS** |
| CITY OF HAYWARD, et al., | Re: Dkt. No. 32 |
| Defendants. | |

Plaintiff Evan Blickenstaff accuses defendants City of Hayward ("the City") and six Hayward police officers (Daniel Morgan, Alicia Romero, Roberto Gonzalez, Tommie Clayton, Ryan Cantrell, and Garett Wagner) (collectively, "the defendants") of violating his civil rights and other laws when they towed a motor home in which Blickenstaff was living.[1] As currently pleaded, Blickenstaff has not plausibly alleged a Fourth Amendment violation because the seizure of his motor home appears to fall within the community caretaking exception to the warrant requirement. Nor does he allege a violation of procedural due process under the Fourteenth Amendment because a sticker placed on the vehicle provided sufficient notice of removal and he has not shown that exceptions to the post-tow hearing requirement did not apply. Neither party has sufficiently addressed the Eighth Amendment claim, and for the moment, I cannot tell that it is plausibly alleged. Because Blickenstaff's conspiracy, Bane Act, and *Monell* liability claims rely on a constitutional violation, which has not been sufficiently pleaded, they too are DISMISSED. So is the conversion claim: Blickenstaff has not shown that the defendants acted wrongfully. The motion to dismiss the First Amended Complaint ("FAC") is GRANTED with leave to amend.

---

[1] As with the prior motion to dismiss, the remaining named defendant, Jack James Tow Service, Inc., did not bring this motion. *See* Dkt. No. 32.

**BACKGROUND**

Blickenstaff's dispute with Hayward police traces back to October or November of 2019, when he was living in his 1989 Travelcraft Econoline 350 motor home ("the motor home") parked on private property in the city. *See* FAC [Dkt. No. 31] ¶¶ 3, 10. Blickenstaff had the property owner's permission to park there, but after a "dispute regarding their relationship," the owner withdrew that permission. *Id*. ¶¶ 10-11. According to the FAC, Hayward police officers (including Morgan, Romero, and Clayton) tried to remove Blickenstaff and his motor home from the property. *Id*. ¶ 11. But Blickenstaff and the property owner reached an agreement so that Blickenstaff would leave on his own. *Id*.

The FAC alleges that "as a result of these interactions, and their failure to remove" Blickenstaff from the property, Hayward police (including Morgan, Romero, and Clayton) "formed an animus" against Blickenstaff and "hatched an intentional plan to remove [him] from the city and/or destroy his ability to live in his motor home within the city's limits." *Id*. ¶ 12. As part of this plan, the FAC alleges, the defendants "determined to forcibly and summarily seize [Blickenstaff's] motor home" without reasonable grounds to do so and without affording him due process. *See id*.

The FAC further alleges that in September 2020, Romero received an email with photos of Blickenstaff's motor home among a group of about 15 vehicles parked along a private road in Hayward. *Id*. ¶ 18. She allegedly recognized Blickenstaff's motor home as the one she saw in October 2019. *Id*. Then, "pursuant to the plan," Romero and other officers allegedly "set out on a number of steps . . . to permanently separate" Blickenstaff from his motor home. *Id*.

On September 28, Romero allegedly sent Blickenstaff a "notice to abate and vehicle abatement report," despite knowing that the motor home was neither abandoned nor inoperable. *Id*. ¶ 19. The FAC further alleges that Romero mailed this to Blickenstaff's prior address, either knowing that he would not receive the notice or acting with deliberate indifference to whether he actually would. *Id*.

The next day, Romero, Clayton, and Gonzalez went to the road where Blickenstaff's motor home was parked and reviewed the site, "avoiding speaking directly with [Blickenstaff] regarding

2

his motor home." *Id.* ¶ 20.

At some point between September 29 and October 10, 2020, police placed a yellow sticker on Blickenstaff's motor home that referenced local and state ordinances regarding abandoned or inoperable vehicles, but did not provide notice of other violations or infractions. *Id.* ¶ 21.[2] The FAC alleges that police did this despite knowing that Blickenstaff lived in the motor home and had moved it to the location, and that the vehicle "was not abandoned, wrecked, dismantled, or inoperable." *See id.* ¶¶ 21-22. The FAC alleges that the sticker did not state that Blickenstaff was required to move the motor home, provide dates for any inspection or removal of the vehicle, or inform him of any right to contest an abatement determination or request a hearing regarding the motor home's removal. *Id.* ¶ 21. Instead, the sticker stated that Blickenstaff could comply with the abatement law by restoring the motor home to normal operating service and showing that it was operable. *Id.* It also stated that an abatement notice would be sent in the mail, which Blickenstaff alleges that he never received. *Id.*

On October 6, 2020, police returned to where Blickenstaff's motor home was parked and saw that it was still there, but again did not attempt to talk to Blickenstaff. *Id.* ¶ 24. About two

---

[2] A court generally may not consider "any material beyond the pleadings" when deciding a Rule 12(b)(6) motion to dismiss without converting it into one for summary judgment. *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001), *overruled on other grounds by Galbraith v. Cty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002) *see also* Fed. R. Civ. P. 12(d). Courts may, however, consider "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice" without so converting the motion. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). "Although mere mention of the existence of a document is insufficient to incorporate the contents of a document, the document is incorporated when its contents are described and the document is integral to the complaint." *Tunac v. United States*, 897 F.3d 1197, 1207 n.8 (9th Cir. 2018) (citation and quotation marks omitted).

Blickenstaff attached two exhibits to his FAC: one purporting to be a copy of the sticker that was placed on his motor home, and another of a sign posted in the area after it was towed. *See* FAC ¶¶ 21, 28; FAC, Exs. A, B. I will consider the photo of the sticker, as it is incorporated into the FAC by reference. The second photo is not relevant to my evaluation of Blickenstaff's claims.

The defendants request that I take notice of three exhibits: portions of the Hayward Municipal Code, their own photo of the sticker purportedly placed on Blickenstaff's motor home, and a copy of the notice to abate mailed to Blickenstaff. *See* RJN [Dkt. No. 34] Exs. 1-3. I will take notice of the municipal code provisions and the copy of the notice, as the facts within can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned. *See* Fed. R. Evid. 201(b)(2). I will not, however, take notice of the photo of the sticker, given the discrepancies between the defendants' photo of the sticker and Blickenstaff's, which are further described in footnote 6.

weeks later, on October 21, Romero, Morgan, Clayton, and Gonzalez "met to carry out the plan to remove [Blickenstaff] from his motor home." *Id*. ¶ 25.  They contacted Jack James Tow Service, Inc., and went to the road. *Id*. ¶ 26.  Blickenstaff was there when police and the towing company arrived. *Id*.

The FAC alleges that Blickenstaff "reasonably understood that, pursuant to the yellow sticker, he had the right and ability to avoid the tow by demonstrating that the motor home was operable." *Id*. ¶ 27.  He told officers that the vehicle was operable and that he was prepared to show them that. *See id*. ¶ 27.  He was also prepared to move the motor home elsewhere. *Id*. ¶ 30.

Police then allegedly told Blickenstaff that he was trespassing on private property. *Id*. ¶ 28.  Blickenstaff contends that he had no prior notice of any trespassing allegations. *Id*.

Despite repeatedly telling police that the motor home was operable and that he could demonstrate such, officers allegedly refused to allow Blickenstaff to do so. *Id*. ¶ 30.  Instead, Morgan said that the motor home would be towed and allegedly threatened Blickenstaff with arrest if he did not move away from the vehicle. *Id*.  Jack James then towed it away. *Id*. ¶ 32.

Later that day and the next, Blickenstaff called the Hayward Police Department multiple times "in an attempt to have a hearing on the forcible tow and removal of the motor home." *Id*. ¶ 34.  Blickenstaff made similar phone calls until November 6, 2020, "to no avail." *Id*.

On November 6, Blickenstaff spoke to Lieutenant Wagner of the Hayward Police Department on the phone. *Id*. ¶ 38.  Wagner allegedly told him that he had reviewed police documents, and "that everything had been done legally." *Id*.  When Blickenstaff reiterated his demand for a hearing, "Wagner declared that 'this phone call' is the hearing" and then, that because the vehicle was abandoned, the vehicle code section allowing a post-tow hearing did not apply. *Id*.  Blickenstaff alleges that this "was part of the Hayward Police Department's plan . . . to declare contrary to clear evidence that [Blickenstaff's] obviously occupied and continuously used motor home was an 'abandoned' vehicle." *Id*.

Despite efforts to locate his motor home and buy it back at a lien sale, Blickenstaff never got the vehicle back. *See id*. ¶¶ 44-53.  It is unclear from the FAC what ultimately happened to the motor home; a Jack James employee only told Blickenstaff that it was "gone." *Id*. ¶ 51.

4

Blickenstaff alleges that Hayward and Jack James have a "long-standing contract whereby the tow service will seize and remove any vehicle at the direction of the police, regardless of the wishes or objections of the vehicle's owners," then force its sale. *Id*. ¶ 13. He asserts that the City's ordinances allow police to take "arbitrary, capricious and excessive vehicle abatement actions" and "wrongfully and summarily seize and convert vehicles . . . without probable cause, without notice or opportunity for a meaningful hearing, and as an excessive fine or punishment." *Id*. ¶ 14. And, he contends, officers are not properly trained on when a vehicle is considered inoperable or what notice is required. *Id*. ¶ 15.

Blickenstaff filed his initial complaint on December 22, 2021, which I dismissed upon motion by the defendants for failure to state a claim but granted leave to amend. Dkt. Nos. 1, 30. He then filed the FAC, which alleges seven claims: five violations of 42 U.S.C. § 1983, based on violations of the Fourth, Eighth, and Fourteenth Amendments, and conspiracy to deprive him of those constitutional rights; a violation of the Tom Bane Civil Rights Act; and conversion. *See generally* FAC. The defendants again moved to dismiss. Dkt. No. 32.[3]

**LEGAL STANDARD**

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). There must be "more than a sheer possibility that a defendant has acted unlawfully." *Id*. While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *See Twombly*, 550 U.S. at 555, 570.

---

[3] After this motion was briefed and argued, Blickenstaff filed an administrative motion to reopen submission so that he could present a police report written by one of the defendants. *See* Dkt. No. 43. The motion is DENIED. Although evidence is not necessary to overcome a motion to dismiss, because I am granting Blickenstaff leave to amend, he may add allegations relating to this report in any amended complaint he files.

5

In deciding whether the plaintiff has stated a claim upon which relief can be granted, the court accepts his allegations as true and draws all reasonable inferences in his favor. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

If the court dismisses the complaint, it "should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *See Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000). In making this determination, the court should consider factors such as "the presence or absence of undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party and futility of the proposed amendment." *See Moore v. Kayport Package Express*, 885 F.2d 531, 538 (9th Cir. 1989).

**DISCUSSION**

**I.      SECTION 1983 CLAIMS**

Section 1983 creates a cause of action for violations of the United States Constitution and federal laws by officials acting under the color of law. 42 U.S.C. § 1983. It provides a "method for vindicating federal rights elsewhere conferred" rather than a standalone source of substantive rights. *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979). Blickenstaff bases his section 1983 claims on alleged violations of the Fourth, Eighth, and Fourteenth Amendments, along with conspiracy to deprive him of those constitutional rights. *See* FAC ¶¶ 59-88.

**A.  Fourth Amendment**

The Fourth Amendment provides, in relevant part, that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV. The Ninth Circuit has expressly held that "[t]he impoundment of an automobile is a seizure within the meaning of the Fourth Amendment." *Miranda v. City of Cornelius*, 429 F.3d 858, 862 (9th Cir. 2005).

"A seizure conducted without a warrant is per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well delineated exceptions."

6

*United States v. Hawkins*, 249 F.3d 867, 872 (9th Cir. 2001) (citation and quotation marks omitted).  The government bears the burden of showing that one of those exceptions applies.  *Id*.

It is undisputed that the defendants seized the motor home without a warrant.  *See* FAC ¶ 61; *see also* Mot. to Dismiss ("MTD") [Dkt. No. 33] 6:1-7:16.  The defendants argue that the seizure fell within two exceptions to the warrant requirement: the community caretaking and plain view doctrines.  *See* MTD at 6:1-7:16.

In exercising their community caretaking function, "police officers may impound vehicles that jeopardize public safety and the efficient movement of vehicular traffic."  *Miranda*, 429 F.3d at 864 (citation and quotation marks omitted).  "Whether an impoundment is warranted under this community caretaking doctrine depends on the location of the vehicle and the police officers' duty to prevent it from creating a hazard to other drivers or being a target for vandalism or theft."  *Id*.  Whether the doctrine applies "turns on the facts and circumstances of each case"; it "does not categorically permit government officials to impound private property simply because state law does."  *Sandoval v. Cty. of Sonoma*, 912 F.3d 509, 516 (9th Cir. 2018); *see also Miranda*, 429 F.3d at 864 ("the decision to impound pursuant to the authority of a city ordinance and state statute does not, in and of itself, determine the reasonableness of the seizure").

The defendants rely on the sticker placed on the motor home, which referenced section 4-1.20 of the Hayward Municipal Code and section 22660 of the California Vehicle Code.  Reply [Dkt. No. 40] 1:17-2:4 (citing in part FAC ¶ 21).  The municipal code section, which is authorized by the vehicle code section, allows for the removal of "abandoned, wrecked, dismantled or inoperative vehicles or parts thereof as public nuisances."  *See* Hayward Mun. Code. § 4-1.20; Cal. Veh. Code § 22660.  It further declares:

> The accumulation and storage of abandoned, wrecked, dismantled, or inoperative vehicles or parts thereof on private or public property not including highways is hereby found to create a condition tending to reduce the value of private property, to promote blight and deterioration, to invite plundering, to create fire hazards, to constitute an attractive nuisance creating a hazard to the health and safety of minors, to create a harborage for rodents and insects and to be injurious to the health, safety and general welfare.

Hayward Mun. Code. § 4-1.20.  Therefore, the defendants argue, the yellow sticker shows that

7

their conduct "squarely falls within the community caretaking function in determining that [Blickenstaff's] abandoned/inoperable vehicle, as a public nuisance, needed to be removed." Reply at 2:5-7.

In response, Blickenstaff argues that the FAC alleges only that police removed his motor home from a private road under the abandoned vehicle abatement program. Oppo. [Dkt. No. 39] 8:6-25. According to Blickenstaff, under *Miranda* "such removals are not taken pursuant to [the] community caretaking function, and courts readily reject reliance on the doctrine in actions challenging permanent warrantless seizures of abated vehicles." *Id*. at 8:9-25 (citing cases). His argument ignores the language on the sticker.

The cases that Blickenstaff cites are also factually distinguishable. *Fitzpatrick v. City of Los Angeles*, No. CV-21-6841, 2022 WL 1421319, at *1-5 (C.D. Cal. Jan. 20, 2022), involved the towing of a legally parked car on the basis of unpaid parking tickets. In *Sandoval v. County of Sonoma*, 72 F. Supp. 3d 997, 1000 (N.D. Cal. 2014), police acted under a California Vehicle Code section allowing the impoundment of the vehicle of a driver who had never been issued a driver's license. In *VienPhuong Ti Ho v. City of Long Beach*, No. 19-CV-09430, 2020 WL 8617674, at *18 (C.D. Cal. Nov. 10, 2020), the defendants argued that police towed the plaintiff's vehicle from a neighbor's private driveway because it was trespassing on private property, but the court stated that it was unclear whether the neighbors lawfully owned or possessed the property so as to have a legal right to tow the plaintiff's vehicle from it. In *Spitzer v. Aljoe*, No. 13-CV-05442-MEJ, 2014 WL 1154165, at *4 (N.D. Cal. Mar. 20, 2014), the plaintiff alleged that he "never received notice that his truck was subject to an order of abatement" before it was towed from in front of his property. And in *United States v. Biddle*, No. C-09-01159-MHP, 2010 WL 11530869, *7 (N.D. Cal. July 8, 2010), *aff'd in part, rev'd in part, and remanded on other grounds by United States v. Biddle*, 467 Fed. App'x 693 (9th Cir. 2012), the court did not reach a decision on whether the community caretaking doctrine applied because the evidence showed that officers towed the car "because they determined it had been abandoned" and not to secure it or protect the public from an unsafe vehicle. Police found the vehicle in question legally parked outside of a biker gang's club house, with its engine running,

a door open, and music playing. *Id*. at *1.  Although a dozen people stood nearby, and police determined the vehicle's owner through a records check, they ultimately deemed the vehicle abandoned and had it towed.  *See id*. at *1-3.

The key distinction between these cases and the one at hand is the Hayward Municipal Code provision cited on the sticker placed on Blickenstaff's motor home.  As alleged in the FAC, the sticker referenced section 4-1.20 of the Hayward Municipal Code.  FAC ¶ 21.  The language of that section connects the removal of "abandoned, wrecked, dismantled or inoperative vehicles" to public safety, stating in part that such vehicles "create a condition tending to" invite plundering," "create fire hazards," "constitute . . . a hazard to the health and safety of minors," and are "injurious to the health, safety, and general welfare."  *See* Hayward Mun. Code. § 4-1.20.  The sticker places the seizure within the context of the community caretaking function rather than just an abandoned vehicle abatement program.  *See Miranda*, 429 F.3d at 864.

To be sure, the sticker alone does not establish that the community caretaking doctrine applies, but other allegations support it.  Although the motor home was parked on a private road, it is plausible that the efficient movement of vehicular traffic on that road could be impeded by the presence of the motor home and more than a dozen other vehicles parked there.  *See* FAC ¶ 20.  Police were notified of Blickenstaff's vehicle in September 2020, via the photos allegedly sent to Romero, and went to the road on September 29.  *Id*. ¶¶ 18, 20.  When they returned a week later, it was still there.  *Id*. ¶ 24.  Although the FAC alleges that the officers did not attempt to contact Blickenstaff during these visits, it does not allege that Blickenstaff was at the motor home or nearby either time.  *See id*. ¶¶ 20, 24.  By the time police towed the motor home on October 21, they had seen it parked on the road for more than three weeks.  *See id*. ¶ 26.  At that point, a year had passed since their prior interaction with Blickenstaff.  *See id.* ¶ 10.  Given these facts, it is not plausible that , a year after the initial encounter with Blickenstaff, the police should have known that his motor home was still operable, and that after seeing the vehicle parked on the road for three weeks, they should have known it was not abandoned.

The amount of time that the motor home was parked on the road supports the defendants'

argument that it was abandoned and, as a public nuisance, posed a threat to public safety for any of the reasons cited in the municipal code provision. Even if the motor home did not pose any threat to physical safety, it could become a "target for vandalism or theft." *See Miranda*, 429 F.3d at 864. The motor home's alleged location also suggests that it posed a hazard to other drivers. *Id*. These facts, and use of the sticker, establish a prima facie case for the applicability of the community caretaking doctrine, meaning it was not unlawful under the Fourth Amendment. Blickenstaff may be aware of additional facts that would cast doubt on that conclusion; if he is, he should allege them in an amended complaint. For now, the section 1983 claim based on the Fourth Amendment is DISMISSED.[4]

### B. Eighth Amendment

Under the Eighth Amendment, "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII.

In describing the "permanent taking" of Blickenstaff's motor home as "an excessive punishment or fine," it appears that the FAC invokes the Excessive Fines Clause, which "limits the government's power to extract payments, whether in cash or in kind, as punishment for some offense." *Timbs v. Indiana*, 139 S. Ct. 682, 687 (2019) (citations and quotation marks omitted); *see also* FAC ¶ 82. The Supreme Court has held that a fine is unconstitutionally excessive if its amount is "grossly disproportional to the gravity of a defendant's offense." *See United States v. Bajakajian*, 524 U.S. 321, 334 (1998). The Ninth Circuit recently held that this applies to municipal fines, and that *Timbs*—which incorporated the Excessive Fines Clause to the states through the Fourteenth Amendment— "affirmatively opens the door for Eighth Amendment challenges to fines imposed by state and local authorities." *Pimentel v. City of Los Angeles*, 974 F.3d 917, 922 (9th Cir. 2020) (citing *Timbs*, 139 S. Ct. at 686-87).

In *Pimentel*, the court held that the Ninth Circuit's four-factor test for determining whether

---

[4] Because I am dismissing the Fourth Amendment claim under the community caretaking doctrine, I need not decide the parties' arguments about the plain view or open fields doctrines. Nor will I address the potential applicability of qualified immunity for the officers' conduct. If Blickenstaff is able to plausibly show that the seizure was not covered by the community caretaking doctrine, the parties should address qualified immunity in any subsequent motion work.

a fine is "grossly disproportional to the underlying offense" applies to municipal fines as well. *See* 974 F.3d at 921-22. Those factors are: "(1) the nature and extent of the underlying offense; (2) whether the underlying offense related to other illegal activities; (3) whether other penalties may be imposed for the offense; and (4) the extent of the harm caused by the offense." *Id*. at 921 (citations omitted).

The defendants primarily argue that Blickenstaff's Eighth Amendment claim fails because they are "unaware of any legal authority that render [California Vehicle Code] sections 22660 and 22669, or local codes that are enacted pursuant to these sections, as being unconstitutional under the Eighth Amendment." MTD at 7:27-8:3. They also attempt to distinguish *Pimental*, *Timbs*, and another case that Blickenstaff relies upon, arguing that none involved "a vehicle that is declared abandoned/inoperable pursuant to state and local laws with both pre- and post-tow due process provided." *See id*. at 7:18-26.

The defendants' one-sentence attempt to distinguish these cases is not helpful in analyzing Blickenstaff's Eighth Amendment claim, nor is their argument that because the relevant state and local statutes have not been declared unconstitutional, his claim "must fail." *See* id. at 8:3. Unconstitutional laws remain on the books until a court declares them so. The defendants do not point to any case law that affirms that those statutes are indeed constitutional. By their own logic, the absence of any such authority supports a finding that the statutes are unconstitutional.

Blickenstaff's response is not particularly helpful, either. The opposition points to Paragraph 83 of the FAC, which states that "[u]nder clearly established legal norms related to the Eighth Amendment, defendants are liable under 42 U.S.C. § 1983 for imposing a fine or punishment on plaintiff for alleged illegal parking and trespass in the form of seizure, removal, and disposition of plaintiff's home." Oppo. at 17:1-4 (citing FAC ¶ 83). But neither the FAC nor the opposition identifies that authority. *See* Oppo. at 17:1-4; FAC ¶ 83. At most, Blickenstaff cites *Timbs* and *Pimental* for the proposition that the Excessive Fines Clause applies to municipal parking fines. *See id*. at 16:2-18. But the other cases he relies upon deal with the seizure of vehicles under the Fourth or Fourteenth Amendments, not the Eighth. *See id*. at 17:1-19 (citing *Miranda*, 429 F.3d at 860; *Sandoval*, 72 F. Supp. 3d at 1000).

11

Notably, neither side points me to any case law addressing: (1) whether the impoundment of a vehicle constitutes a punishment falling within the Excessive Fines Clause; (2) if so, whether the impoundment of Blickenstaff's vehicle was excessive; or (3) whether seizure of vehicle that also serves as someone's home impacts the analysis. *See Wright v. Riveland*, 219 F.3d 905, 915 (9th Cir. 2000) ("Two questions are pertinent when determining whether the Excessive Fines Clause has been violated: (1) Is the statutory provision a fine, i.e., does it impose punishment? and (2) If so, is the fine excessive?") (citation omitted). *Timbs* arose from the attempted seizure of a vehicle in the context of civil forfeiture, but the parties do not cite to any cases similar to the facts at hand. *See* 139 S. Ct. at 686. Nor does the FAC appear to allege that these defendants assessed any fines related to the impoundment; it only mentions fines imposed by Jack James. *See id*. ¶ 46. And, even assuming that the impoundment of the motor home was covered by the Excessive Fines Clause, neither side meaningfully engages with the four-factor test articulated in *Pimentel*.

It is unclear to me whether the facts alleged state an Eighth Amendment claim because of the lack of briefing on this issue; accordingly, I dismiss it without prejudice to Blickenstaff to establish, either with more facts or additional briefing, that his claim is plausible.

**C.  Fourteenth Amendment**

The Due Process Clause of the Fourteenth Amendment prohibits the state from depriving "any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV. A plaintiff asserting a section 1983 claim based on procedural due process must show: "(1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the government; [and] (3) lack of process." *Portman v. Cty. of Santa Clara*, 995 F.2d 898, 904 (9th Cir. 1993). "An elementary and fundamental requirement of due process . . . is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950).

Blickenstaff asserts two section 1983 claims under the Fourteenth Amendment. He asserts that his due process rights were violated when police failed to give him notice before towing his motor home and again when he was denied a post-seizure hearing. FAC ¶¶ 64-78.

Beginning with the pre-seizure claim, I previously held that Blickenstaff had failed to state a claim because "it appears that Blickenstaff was provided reasonable notice of the impending tow and afforded the opportunity to present his objections—he just did not act upon it." *See* Order Granting Mot. to Dismiss ("First MTD Order") [Dkt. No. 30] 8:4-6. The sticker allegedly placed on his motor home was a "critical detail"; it "stated that the vehicle had been declared to be abandoned, wrecked, dismantled, or inoperable," that one of three abatement methods must be completed or else it would be "removed," and it was placed on the vehicle in which police allegedly knew Blickenstaff lived anywhere from 11 days to three weeks before it was removed. *See id*. at 7:9-8:6 (citations omitted). And, I held, the Hayward Municipal Code provided Blickenstaff the ability to contest whether the motor home was in fact abandoned or inoperable. *Id*. at 7:21-23.[5] According to the defendants, the same allegations again sink Blickenstaff's claim and the FAC "simply does not present facts that should change" my earlier conclusion. MTD at 4:2-5:1.

In response, Blickenstaff makes much of the allegation that he did not receive the mailed abatement notice and that the defendants did not send it by registered or certified mail, as required by the municipal code. *See* Oppo. at 10:21-11:15.[6] He also asserts that the sticker itself was insufficient, as it "did not notify [him] of any right to a hearing to contest the abatement . . . that his vehicle must be moved, that an inspection or reinspection was going to be held, or that the City would tow the vehicle within a certain time period." *Id*. at 11:16-22 (citing FAC ¶ 21). Instead, he argues that he "reasonably believed on the basis of the sticker that he could avoid the removal by showing the police officers at the time of the inspection or reinspection that the motor home

---

[5] My previous Order details the provisions within the Hayward Municipal Code that grant city officials "the authority to cause the abatement and removal" of an "abandoned, wrecked, dismantled, or inoperable vehicle," the notice and hearing opportunity that must be provided to the vehicle's owner before a vehicle is removed, and the appeals process. *See* First MTD Order at 6:17-2. I incorporate the description of those provisions, which were part of the defendants' request for judicial notice, by reference here. *See* RJN, Ex. B.

[6] Even accepting as true Blickenstaff's allegation that the defendants did not send the notice by registered or certified mail, that does not change the outcome of my analysis, as Blickenstaff does not allege that the lack of registered or certified mail deprived him of notice. *See* FAC ¶ 19.

1  was operable." *Id*. at 11:26-28 (same).

2       Blickenstaff again overlooks critical details. The FAC states that the sticker was placed on
3  his motor home, where the defendants knew Blickenstaff lived. *See* FAC ¶¶ 21, 26. The sticker
4  cited two provisions (Hayward Municipal Code section 4-1.20 and California Vehicle Code
5  section 22660) "concerning abandoned or inoperable vehicles." *Id*. ¶ 21. And it "informed
6  Blickenstaff that he could comply with the abatement law by restoring the vehicle to normal
7  operating service and demonstrating it to be operable." *Id*.

8       The photo of the sticker attached to the FAC further shows that Blickenstaff had
9  reasonable notice that the motor home would be removed.[7] It states that "[t]o comply with the
10 law, this vehicle must either be: (1) removed to a licensed dismantler or wrecking yard, or (2)
11 completely enclosed within a garage or building, or (3) restored to normal operating service and
12 demonstrated to be operable." *See id*., Ex. A. It expressly warns that one of those methods "must
13 be completed or the City of Hayward will have the vehicle removed, in which case the vehicle
14 may not again be registered or made inoperable." *Id*. It states that an abatement notice will follow
15 by mail. *Id*. And it provides a phone number to call for additional information. *Id*.

16      As alleged in the FAC, Blickenstaff had ample notice that his vehicle had been declared
17 inoperable or abandoned, and of the steps that he could take to comply with the law. He also had
18 notice that the motor home would be removed if those steps were not taken. If he had questions
19 about the relevant law or processes available to him, there was a phone number that he could call
20 for additional information. This information was articulated on the sticker placed on the vehicle in
21 which the defendants allegedly knew that Blickenstaff lived. Moreover, because the sticker was
22 placed on his motor home "[a]t some point between and including September 29, 2020 and
23 October 10, 2020," and the vehicle not towed until October 21, Blickenstaff again had anywhere

---

[7] Although both Blickenstaff and the defendants have proffered photos of the sticker (Blickenstaff as Exhibit A to the FAC, the defendants as Exhibit 2 in their Request for Judicial Notice), the stickers in each photo are different. The sticker in Blickenstaff's photo has no writing on it, while the sticker in the defendants' photo does. *Compare* FAC, Ex. A *with* RJN, Ex. 2. And both photos are so closely cropped, it is difficult to tell what vehicle they were actually placed on. *See* FAC, Ex. A; RJN, Ex. 2. For the purposes of this motion only, I will accept Blickenstaff's allegations (in the form of his photo) as true.

14

from 11 days to three weeks to act. *See* FAC ¶¶ 21, 25-26. As alleged, Blickenstaff was provided reasonable notice of the action and an opportunity to object. *See Mullane*, 339 U.S. at 314. He just did not do so. Accordingly, his pre-seizure Fourteenth Amendment claim is DISMISSED.

Nor has Blickenstaff adequately alleged that the defendants violated his Fourteenth Amendment rights to a post-seizure hearing. After the Ninth Circuit held that due process requires a prompt post-tow hearing, section 22852 of the California Vehicle Code was enacted. *See Scofield v. City of Hillsborough*, 862 F.2d 759, 764 n.3 (9th Cir. 1988). Section 22852 requires that whenever a public agency or member of such directs the storage of a vehicle, it "shall provide the vehicle's registered and legal owners of record, or their agents, with the opportunity for a poststorage hearing to determine the validity of the storage." Cal. Veh. Code § 22852(a).

As the defendants note, there are two relevant exceptions: sections 22852(f) and (g). *See* MTD at 5:3-27. Section 22852(f) exempts "vehicles abated under the Abandoned Vehicle Abatement Program pursuant to sections 22660 to 22668, inclusive"; section 22852(g) exempts "abandoned vehicles removed pursuant to section 22669 that are determined by the public agency to have an estimated value of five hundred dollars ($500) or less." Cal. Veh. Code § 22852(f), (g).

The issue with Blickenstaff's previous iteration of this claim was that the complaint was "void of any allegations regarding the vehicle's monetary value." *See* First MTD Order at 8:7-13. The FAC alleges that section 22852(g) "does not apply" in part because "the value of the vehicle was not, and could not be, estimated to be below $500." FAC ¶ 75. Similarly, it alleges that "it was obvious to the police officers and the Police Department that the vehicle was valued substantially in excess of $500." *Id*. ¶ 23. But the FAC provides no factual allegations supporting these statements, which are too conclusory on their own to establish the motor home's value.

Moreover, the yellow sticker placed on Blickenstaff's motor home referenced California Vehicle Code section 22660 "concerning abandoned or inoperable vehicles." *See* FAC ¶ 21. As alleged, the vehicle was removed under this section, meaning a post-tow hearing would not be required under section 22852(f), which states that section 22852's post-seizure hearing requirement "does not apply to vehicles abated under the Abandoned Vehicle Abatement Program pursuant to sections 22660 to 22668." *See* Cal. Veh. Code § 22852(f). Taken together, the

15

allegation in the FAC and plain language of section 22852(f) belie Blickenstaff's argument that a post-seizure hearing was required. Blickenstaff does not address the defendants' arguments about section 22852(f) in his opposition. *See generally* Oppo.

Blickenstaff has not adequately alleged that a post-tow hearing was required, as the FAC makes only conclusory allegations about the motor home's value (to avoid section 22852(g)) and alleges that it was removed pursuant to section 22660 (bringing it within section 22852(f)). His post-seizure Fourteenth Amendment claim is thus DISMISSED.

## II. REMAINING CLAIMS

Blickenstaff's conspiracy, Bane Act, and *Monell* liability claims necessarily fail: each requires a constitutional violation, which the FAC does not sufficiently allege for the reasons stated above. *See Inman v. Anderson*, 294 F. Supp. 3d 907, 926-27 (N.D. Cal. 2018) (stating that a plaintiff asserting a conspiracy claim under section 1983 must show a constitutional deprivation); *Reese v. Cty. of Sacramento*, 888 F.3d 1030, 1043 (9th Cir. 2018) (noting that a Bane Act claim requires a finding of a constitutional violation); *Lockett v. Cty. of Los Angeles*, 977 F.3d 737, 741 (9th Cir. 2020) (stating that *Monell* claims are "contingent on a violation of constitutional rights") (citing *Scott v. Henrich*, 39 F.3d 912, 916 (9th Cir. 1994)).

The conversion claim again falls short. "Conversion is the wrongful exercise of dominion over the property of another." *Farmers Ins. Exch. v. Zerin*, 53 Cal. App. 4th 445, 451 (1997) (citation omitted). The elements of a conversion claim are: (1) "the plaintiff's ownership or right to possession of the property at the time of the conversion"; (2) "the defendant's conversion by a wrongful act or disposition of property rights"; (3) and damages. *Id*. (same). The FAC does not sufficiently allege that the defendants took Blickenstaff's motor home by a wrongful act; instead, it appears that they followed the law in doing so.

## CONCLUSION

The defendants' motion to dismiss is GRANTED with leave to amend. Any amended

complaint is due no later than February 10, 2023.

**IT IS SO ORDERED.**

Dated: January 13, 2023



William H. Orrick
United States District Judge

17